KING, FULLER & COMPANY v. THE LAMOILLE VALLEY RAILROAD COMPANY.

*Contract. Performance. Covenant. Assumpsit. Waiver. Evidence.*

On December 3, 1869, plaintiffs entered into a contract under seal with defendant, whereby they agreed to "construct and finish . . . all the graduation, masonry," &c., on a portion of defendant's railroad, on or before September 1, 1871, and defendant agreed to pay therefor eighty-five per cent. of the stipulated price as the work progressed, and the balance when the work was finished and accepted by defendant's engineer. It was also thereby agreed that plaintiffs should "from time to time on three month's notice in writing" by defendant, "retard or lessen the work for such time and to such extent" as defendant should thereby require, and that if the work should be thereby delayed or retarded, the time in which the work was to be completed should be extended such length of time as the engineer might determine. Plaintiffs immediately began work with a force insufficient to complete it within the contract period, but intending to increase it sufficiently for that purpose, and continued therein till May 28, 1870, when defendant's engineer notified them "to stop any increase of work." It was then agreed that plaintiffs should do a limited amount of work, to prepare a part of the road for early use, and should be allowed a reasonable time after expiration of the contract period, for completion of the residue. Plaintiffs thereafter prosecuted the work in accordance with that agreement until November, 1872, when defendant directed them to stop work, which they did within three months. Defendant paid all of the contract price except the part that was earned after the giving of notice in November, and a part of the final payment of fifteen per cent., for which plaintiffs brought covenant. *Held,* that the original contract was, in effect, that the work should be done on or before September 1, 1871, or such later date as might be fixed on a contingency therein provided for, that the work was therefore done in performance of the original contract, and that for the breach by defendant covenant would lie ; that the provision for three months' notice of the retarding or lessening of work was for plaintiffs' benefit and might be waived by them, that as it was defendant's fault that no definite extended time was fixed, plaintiffs were not to be prejudiced thereby; that the direc-

47

tion given to the plaintiffs by the engineer was for retarding or lessening the work within the meaning of the contract; that evidence proving the agreement for an extension of time for performance, and performance according to that agreement, was admissible; and that plaintiffs were entitled to pay for work done within three months after the notice of November, 1872.

COVENANT.    The case was referred, and the referees reported the following facts :

On December 3, 1869, the plaintiffs entered into a contract under seal with the defendant, whereby they agreed " to contract and finish in a most substantial and workmanlike manner " to the defendant's satisfaction and acceptance, " all the graduation, masonry, and such other work " as should be required " in sections numbered one to thirteen inclusive " of the first division of the defendant's railroad, and to finish the same on or before September 1, 1871.    The defendant thereby agreed to pay therefor as the work progressed, eighty-five per cent. of the stipulated price, and to pay the balance when the work should have been accepted by defendant's engineer as completed according to contract.    By note four of the contract it was agreed that the plaintiffs should " from time to time, on three months' notice in writing " by the defendant, " retard or lessen the work for such time and to such extent " as the defendant should thereby require, and that in case the work should be thereby delayed or retarded, the time in which the work was to be completed should be extended such length of time as the engineer in charge might determine.    The plaintiffs immediately began work under the contract with a force insufficient to complete it within the contract period, but intending to increase it sufficiently for that purpose, and continued therein until May 28, 1870, when they received a letter of that date from the defendant's engineer, notifying them that he had been directed "to stop any increase of work," and that the plaintiffs should " govern themselves accordingly."    On September 2d following, the plaintiffs had a conference with the defendant's president, and later in the month, and in December and April following, a correspondence with its engineer, wherein it was agreed that a limited amount of work should be done, to complete that portion of the line most needed for early use, and that for the completion of the

residue a reasonable time should be given after the expiration of the time limited by the original contract. The plaintiffs thereafter prosecuted the work in accordance with that agreement, employing during the years 1870 and 1871 a force insufficient for the completion of the work within the time originally agreed upon. On November 20, 1872, the defendant's engineer wrote to the plaintiffs, saying that he was instructed to have all work suspended on that part of the road ; that he hoped that would be done without delay ; that he was aware the contract contemplated three months' notice of the issue of such an order, but that the circumstances were exceptional, and must be apparent to the plaintiffs ; that the state of the money market rendered it impossible for the defendant to negotiate its securities, &c. On the 27th of the same month he wrote again, saying that he did not feel authorized by the language of the contract to give a peremptory order for the immediate suspension of the work, but that the directors of the defendant could not, and, until further notice, would not pay for further work, and wished that the work might be suspended immediately, and took upon themselves all the onus of so suspending it, and the responsibility for the results. The orders conveyed by those letters were never countermanded ; and immediately on their receipt by the plaintiffs, work was stopped and nothing further done, except work by Bycraft & Crombie, who were at work under the plaintiffs, to the amount of $156, which was done within three months of the receipt of those orders, and for which the plaintiffs were never paid. With the exception of that item, the work was all paid for in accordance with the contract except part of the fifteen per cent. that was to be retained until completion of the work, which the defendant refused to pay. The unpaid part thereof with interest thereon to September 10, 1878, was found to amount to $12,797.18 ; and the $156 due for work done by Bycraft & Crombie, was found to amount, with interest to the same date, to $207.82. The plaintiffs made claim for a further sum on account of a deviation in the building of the road from the projected line, and the referees found that the increased cost to the plaintiffs by reason of that deviation, with interest to the same date, was $5,388.67. The question as to the

liability of the defendant therefor was submitted to the court. The defendant claimed that it had suffered damage by reason of non-performance on the part of the plaintiffs within the time agreed on, and it was found that the defendant did in fact suffer loss to a large amount in consequence of the delay in completing the road, through increased cost of construction, deterioration of accumulated material, &c. The question as to the plaintiffs' liability therefor, and as to whether the amount thereof should be deducted from whatever might be found due to the plaintiffs, was submitted to the court.

The evidence from which the referees found an agreement for an extension of time for performance on the part of the plaintiffs, and prosecution of the work by them in accordance with that agreement, was received by the referees subject to objection; and the defendant objected to the acceptance of the report, for that the evidence was inadmissible.

At the September Term, 1878, the court, ROYCE, J., presiding, rendered judgment on the report, *pro forma*, for $18,393.67; to which the defendant excepted.

*H. S. Royce* and *H. A. Burt*, for the defendant.

The obligation of the defendant to perform depended on performance by the plaintiffs. The plaintiffs allege performance upon their part, but the fact is found against them. Where the covenants are dependent, there can be no recovery, unless performance by the plaintiff is alleged and proved. 2 Stevens N. P. 1071; *Porter* v. *Stewart*, 2 Aik. 417. Covenant will not lie. Assumpsit affords the only remedy, if there is any. *Bassett* v. *Sanborn*, 9 Cush. 58; *Freeman* v. *Adams*, 9 Johns. 115; *Little* v. *Holland*, 3 T. R. 590; *Heard* v. *Wadham*, 1 East, 619; *Barker* v. *T. & R. R. Co.* 27 Vt. 774; *Philips* v. *Rose*, 8 Johns. 392; *Jewell* v. *Schræppel*, 4 Cow. 564; *Smith* v. *Smith*, 45 Vt. 433; *Sherwin* v. *R. & B. Railroad Co.* 24 Vt. 347. The agreement provides that if, on request of the defendant, the force employed by the plaintiffs should be *lessened* and the work retarded, the time for performance by the plaintiffs should be extended accordingly; but if request had been made and work had been retarded, and

the time for performance had been extended, it would not have been an enlargement of the time by the original agreement, but by the subsequent agreement.    It is the same in effect as if it had been provided by the contract that the time for performance by the plaintiffs thereunder should be extended by agreement. But the plaintiffs were not requested to retard nor lessen the work, but merely to stop increase.    When the time for performance of an agreement under seal is extended by an instrument under seal, there must be performance within the extended time. *Porter* v. *Stewart*, *Bassett* v. *Sanborn*, *Freeman* v. *Adams*, *Jewell* v. *Schrœppel*, *Barker* v. *T. & R. R. Co.*, *supra*.    This, however, is but an assertion of the general principle, that to sustain covenant, the plaintiff must allege and prove performance on his part.

The defendant should be allowed what it cost above the contract price to complete the work.    Sedgw. Dam. 504 ;   *Smith* v. *Foster*, 36 Vt. 705 ;   *Smith* v. *Smith*, *supra*.

*Edson, Rand & Cross*, for the plaintiffs.

The engineer's orders of May, September, and December, 1870, and of April, 1871, were retarding orders under the provision of the contract.    The fact that the plaintiffs retarded the work without insisting on the three months' notice, does not change the nature of the orders.    It was competent for the plaintiffs to waive the notice.    After those retarding orders were made, the contract was not one to be performed September 1, 1871, but one to be performed in such time after that date as the engineer should determine, and he determined that the plaintiffs should have an indefinite time.    That extension did not make a new contract.    It was provided for by the contract itself on the happening of a contingency ;   or, more correctly speaking, on the happening of the contingency, the contract was not one to be performed at a particular time named in the contract, but one to be performed within a time to be fixed by the engineer.    On the retarding of the work, the engineer was the arbiter between the parties as to the extra time to be allowed *under the contract*.    Whatever

the arbiter could do under the contract, the parties themselves could do by agreement; and if the action of the arbiter under the contract fixing the additional time to be allowed does not make a new contract, the action of the parties in doing the same thing by agreement cannot be construed to do so. Thus the case is different from *Smith* v. *Smith*, 45 Vt. 433, and *Sherwin* v. *R. & B. Railroad Co.* 24 Vt. 347, where it is held that when a party contracts under seal to do work by a specified time, and the time is subsequently enlarged by parol, the parol enlargement makes a new contract on which assumpsit will lie but not covenant. Here there is no enlarging of the time by parol, but an enlarging of it by virtue of a stipulation in the contract itself. Furthermore, it appears that the parties understood at the time that they were proceeding under the contract after September 1, 1871. The proceedings of both parties show this; and no suggestion was ever made by either party that the contracts were not in full force. Therefore a sufficient performance is shown to support a recovery, and the recovery must be in covenant on the contract. *Myrick* v. *Slason*, 19 Vt. 121 ; *Camp* v. *Barker*, 21 Vt. 469 ; *McCord* v. *W. F. Railroad Co.* 3 La. 285. Under the contract, the defendant had the right to retard the work, and from the findings of the referees it appears that they did retard it to such an extent that they prevented the plaintiffs from performing the contract by September 1, 1871. In other words, the defendant hindered the plaintiffs from full performance of a condition precedent. It is therefore estopped from insisting on failure to perform. *Sherwin* v. *R. & B. Railroad Co., supra.* Defendant knew that the plaintiffs performed work after September 1, 1871, and expressed entire satisfaction therewith. That amounted to a waiver of the forfeiture on account of non-performance by September 1, if there was any such forfeiture. *Gallagher* v. *Nichols*, 60 N. Y. 447 ; *Smith* v. *Gugerty*, 4 Barb. 614 ; *Mayor of New York* v. *Butler*, 1 Barb. 325 ; *Sinclair* v. *Talmadge*, 35 Barb. 602.

The orders of November 20 and 27 were a discharge of the plaintiffs from further performance of the contract, and entitled them to bring suit immediately, without further performance or

an offer of further performance. *Bunye* v. *Koop*, 48 N. Y. 225 ; *Crist* v. *Armour*, 34 Barb. 378 ; *Danforth* v. *Walker*, 37 Vt. 239 ; *N. O. & W. Railroad Co.* v. *Ganath*, 18 La. 510.

The unpaid balance of the fifteen per cent. retained by defendant should be recovered, and no question arises as to the amount. The plaintiffs should also recover for work done by Bycraft & Crombie within three months after the receipt of orders to suspend work.

The opinion of the court was delivered by

POWERS, J.   The plaintiffs were contractors for building certain sections of the defendant's railroad.   The terms of their agreement were embodied in a written contract under seal, signed by both parties.   By the terms of the contract the plaintiffs agreed to complete the work on or before September 1, 1871.   By note 4 incorporated in the contract it is provided that the plaintiffs, on three months' notice in writing by the defendant, shall retard or lessen the work to such extent as the defendant may desire, and, if the work be so retarded, then the time for the completion of the work is to be extended such length of time as the engineer in charge may determine.   The plaintiffs began the prosecution of the work under the contract in 1869, and continued their work with a small force, not large enough to complete the work by September 1, 1871, but intending to increase the force sufficiently for that purpose, until May 28, 1870, when they were notified by the defendant " to stop any increase of work."   After this, mutual arrangements were made between the plaintiffs and defendant, as shown by the correspondence referred to in the report of the referees, from which the referees find the fact that it was mutually understood and agreed by the parties before September 1, 1871, that the time for the completion of the contract should be extended, and that the work was thereafterwards prosecuted pursuant to such agreement.   The work was done, estimated, and paid for, pursuant to the terms of the contract in all respects save the time of performance.   The defendant now insists that the arrangement of the parties under which the extension of the time for the completion of the work was made, was such as compels the plain-

tiffs to sue in assumpsit, and that this action of covenant cannot be maintained upon the contract so modified. The general rule that the modification of a contract under seal by a new and subsequent parol agreement changing some of the contract provisions will set the whole contract at large and compel a resort to the action of assumpsit upon the modified contract, is well settled, and not questioned by counsel in this case. The plaintiff must set out his contract in his declaration, and must prove performance of it as it is laid. Proof of performance after the time would not support the declaration, and therefore would be inadmissible. *Little* v. *Holland,* 3 T. R. 590 ; *Jewell* v. *Schrœppel,* 4 Cowen, 564 ; *Smith* v. *Smith,* 45 Vt. 433. But to work this result, the sealed contract must appear to have been in whole or partly superseded by the new parol agreement, so that performance by the party after the parol modification is not an execution of the original contract, but an execution of the modified contract. In this case the date named, September 1, 1871, is an alternative date. The contract itself provides another time for performance. Taken as a whole, the contract practically runs, the said work to be finished, &c , on or before September 1, 1871, or such later day as may be fixed upon by the engineer upon the happening of the contingency herein provided for. If the contingency happen, and the time be thereupon extended, the after performance of work is not done in execution of any new contract, but in execution of the original contract itself, and for any breach of its terms an action of covenant will lie. *Shaeffer* v *Geisenbergh,* 47 Penn. St. 500. In the case last cited the plaintiff contracted under seal to construct a building for the defendant. The contract contained this clause : " The said Geisenbergh, however, reserves the right to have changes made in the plan or arrangement of the building, he compensating the said Shaeffer for any additional expense incurred thereby, if any." Changes were made by the defendant, and extra expense thereby occasioned to the plaintiff. The plaintiff sued in assumpsit, and it was held that the modifications made were provided for by the sealed contracts, and, when made, were in execution of that contract, and the remedy was covenant upon that contract. The provision that the defendant should give three

King, Fuller & Co. *v.* Lamoille Valley R. R. Co.

months' notice of their determination to suspend work, was made for the plaintiffs' benefit and might be waived by them.   The letters of the engineer to the plaintiffs, dated November 20, 1872, and November 27, 1872, clearly show that the defendant recognized the contract as still in force, and excused the plaintiffs from further prosecution of the work.   It was the defendant's fault that no definite extended time was fixed for the completion of the work.   The plaintiffs were powerless to fix the time, and hence no advantage can be taken by the defendant of their own neglect. It is argued that the directions of the engineer to the plaintiffs not to increase their working force, is not an order retarding or lessening the work within the purview of note 4 in the contract. The defendant knew, as well as the plaintiffs, that the force then being worked could not complete the work within the time limited, and knew of the contemplated increase of force.   The language of the order of May 28, 1870, is to stop any *increase* of work. It is not to stop all work, but stop any increase of work.   What meaning would an intelligent man expect would be given to such language ?   Or how could an intelligent man have used such language, or write any letter of the character upon the subject of the plaintiffs' working force, if he was not cognizant of the fact of a contemplated increase of work ?   The letter meant, and was evidently intended to convey, an order to retard the work.   The evidence on this subject was properly admitted by the referees. The plaintiffs are entitled to recover the item for retained fifteen per cent., and the item for work done by Bycraft & Crombie within three months after notice to plaintiffs to suspend work, in November, 1872, both amounting to $13,005, and interest from date of report.

The *pro-forma* judgment of the County Court is reversed, and judgment for the plaintiffs.